IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CHRIS STOWELL                                                    PLAINTIFF

        v.                        Civil No. 12-5076

DEPUTY CHAMBERS,
Benton County Detention Center                                   DEFENDANT

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

        Plaintiff filed this case pursuant to 42 U.S.C. § 1983.  He proceeds *pro se* and *in forma*

*pauperis*.  Plaintiff is currently incarcerated in the East Arkansas Regional Unit of the Arkansas

Department of Correction.  At the time relevant to this case, Plaintiff was incarcerated in the

Benton County Detention Center (BCDC).

        Plaintiff maintains the Defendant violated his federal constitutional rights when he used

excessive force against Plaintiff on April 3, 2012.  The case is currently before me for report and

recommendation on the Defendant's motion for summary judgment (Doc. 16) and Plaintiff's

response (Doc. 55).

        **1. Background**

        Plaintiff was arrested and booked into the BCDC on March 9, 2012, on pending criminal

charges.  Plaintiff's Response (Doc. 55)(hereinafter Resp.) at ¶ 1(A).  He was a pretrial detainee

until September 24, 2012.  Id. at ¶ 1(C).

        On April 3, 2012, Plaintiff left his pod to go to pod control during pill call.  Resp. at ¶

2.  When Plaintiff asked the Nurse for medicine, Deputy Chambers instructed him to return to

the barracks and complete a medical request form.  Id. at ¶ 3(A).  At this point, Deputy Chambers

did not physically touch Plaintiff.  Id. at ¶ 4(B).

-1-

Plaintiff made a "smart a--" comment in response to Deputy Chambers' instructions. Resp. at ¶ 3(B). After making the comment, Plaintiff went back into the barracks "sling[ing] the door open" and telling the other inmates that Deputy Chambers had "his panties in a wad." Id. at ¶ 3(C).

Deputy Chambers followed Plaintiff into the barracks. Resp. at ¶ 4(C). Deputy Chambers put his left hand on Plaintiff's neck and his right hand on his wrist. Id. at ¶ 4(D). As he began escorting Plaintiff out to pod control, Deputy Chambers put Plaintiff's right arm behind his back and released his neck. Id. at ¶ 4(E). Once they were back out at pod control, Deputy Chambers turned Plaintiff so that his face was towards the wall and his back towards Deputy Chambers. Id. at ¶ 4(F).

Deputy Chambers had a brief conversation with Plaintiff and then released him to return to his pod. Resp. at ¶ 4(G). Plaintiff walked back to his pod on his own. Id. at ¶ 4(H).

Defendant has submitted a DVD of the incident. Defendant's Exhibit (hereinafter Deft's Ex.) 2-B. It actually contains two short videos of the incident: the first is from a camera in pod control; and the second is from a camera inside the pod. Id. Because of his incarceration, Plaintiff has not been able to view the video. Resp. at ¶ 7(B).

Later that day, Plaintiff submitted a grievance stating that "Chambers lost his temper when my back was turned assaulted me from behind. I have marks on my neck and wrist. I have several witnesses and he did it on video at noon meds on 4-3-12. He clearly needs anger management. I will be contacting my attorney." Resp. at ¶ 5. In response, Plaintiff was told the video had been reviewed from several different angles and that no assault took place. Id. at ¶ 6.

In Plaintiff's opinion:

-2-

I was in full compli[a]nce to Deputy Chambers or[]ders there was no reason for there to be use of phys[ic]al force I was not mak[]ing aggressive moves or tak[ing] an aggressive tone I was simply following Deputy Chambers['] last order.

Resp. at ¶ 7(A).

As a result of the use of force, Plaintiff states he had a hand print on the back of his neck for around a week.  Resp. at ¶ 8.  He also told the nurse that his arm was hurting as a result of the use of force but she refused to see him.  Id.  He maintains the use of force made his arm very sore and limited his movement.  Id.

The BCDC's policies require the use of the minimal amount of force necessary to achieve a legitimate objective.  Resp. at ¶ 9.  Plaintiff does not contend the use of force policy is unconstitutional.  Id. at ¶ 10.  Plaintiff does allege that a custom or practice of the BCDC caused the violation of his federal constitutional rights.  Id.  When asked to describe the custom or practice and how he believed the custom or practice was unconstitutional, he responded: "Deputy Chambers was trained to only use force in an instan[ce] w[h]ere the inmate is being physical violent or making phys[ic]al movement which I was not doing."  Id. at ¶ 11.

**2.  Applicable Standard**

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that

-3-

a genuine issue of material fact exists." <u>National Bank of Commerce v. Dow Chemical Co.</u>, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita</u>, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." <u>National Bank</u>, 165 F.3d at 607 (<u>citing Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." <u>Id.</u> (citing, <u>Metge v. Baehler</u>, 762 F.2d 621, 625 (8th Cir. 1985)).

### 3.  Discussion

Deputy Chambers maintains he is entitled to judgment as a matter of law because there was no constitutional violation.  In this regard, he asserts that the video directly contradicts the Plaintiff's claim.  Second, he asserts he is entitled to qualified immunity.  Finally, he maintains no official capacity claim exists.

In <u>Johnson-El v. Schoemehl</u>, 878 F.2d 1043 (8th Cir. 1989) the Eighth Circuit discussed the standard applicable to pretrial detainees and stated:

> [u]nlike convicted prisoners, the state has no right to punish [pretrial detainees].
> *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 1871-72, 60 L. Ed. 2d 447
> (1979).  Their confinement conditions are analyzed under the due process clause
> of the Fifth and Fourteenth Amendments rather than the Eighth Amendment's
> "cruel and unusual punishment" standard which is used for convicted prisoners.
> *Id*.  The injuries detainees suffer must be necessarily incident to administrative
> interests in safety, security and efficiency.    As a pretrial detainee, Freeman's
> excessive-force claim is properly analyzed under the due process clause of the
> Fourteenth Amendment.  *See Graham v. Conner*, 490 U.S. 386, 395 & n. 10
> (1989) (due process clause protects pretrial detainee from force amounting to
> punishment).

<u>Id.</u>, at 1048.

-4-

The courts generally analyze excessive force claims of pretrial detainees in the same way as those of arrestees.  Andrews v. Neer, 253 F.3d 1052, 1060 (8th Cir. 2001)("The evaluation of excessive-force claims brought by pre-trial detainees, although grounded in the Fifth and Fourteenth Amendments rather than the Fourth Amendment, also relies on an objective reasonableness standard."); see also Hicks v. Norwood, 640 F.3d 839 (2011)(applying Fourteenth Amendment's objective reasonableness standard to claims brought by a pretrial detainee).  The use of force must be necessary to some legitimate institutional interest such as safety, security, or efficiency, and the force used must not be in excess of that reasonably believed necessary to achieve those goals.  Schoemehl, 878 F.2d at 1048.  The relevant inquiry being whether the officials behaved in a reasonable way in light of the facts and circumstances confronting them.  See e.g., Wilson v. Williams, 83 F.3d 870, 875 (7th Cir. 1996).

As mentioned above two short videos of the incident exist.  In Scott v. Harris, 550 U.S. 372 (2007), the Supreme Court held that when "opposing parties tell two different stories, one of which is blatantly contradicted" by video evidence contained in the record, "so that no reasonable jury could believe it, a court should not adopt that version of the facts."  Id. at 380. In those circumstances, the court should "view[] the facts in the light depicted by the videotape." Id. at 381.

In applying the principles of Scott to this case, the Court can only conclude that no reasonable juror could find that Deputy Chambers used excessive force.  While the videos show some degree of physical force was used, it was clearly not excessive under the circumstances. Plaintiff does not deny that he was being belligerent or that he opened the pod door forcefully.

-5-

Under the circumstances, no genuine issue of material fact exists as to whether Deputy Chambers responded reasonably.

Alternatively, Deputy Chambers maintains he is entitled to qualified immunity. "Qualified immunity is a defense available to government officials who can prove that their conduct did 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Carroll v. Pfeiffer, 262 F.3d 847, 849 (8th Cir. 2001)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Hunter v. Bryant, 502 U.S. 224, 229 (1991)(quoting, Malley v. Briggs, 475 U.S. 335, 343, 341 (1986)).  The inquiry is normally one of pure law. J.H.H. v. O'Hara, 878 F.2d 240, 243 (8th Cir. 1989).

The issue of whether a state actor is entitled to the protection of qualified immunity is a two-step process.  See Washington v. Normandy Fire Protection Dist., 272 F.3d 522, 526 (8th Cir. 2001) .  First, the court must ask whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [defendant's] conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201 (2001).  Second, the court must determine if the right was clearly established.  See Washington, 272 F.3d at 256.

Here, as discussed above, viewed in the light most favorable to the Plaintiff, there is no genuine issue of material fact as to whether the evidence shows an objective need for the force alleged to have been used.   Under the circumstances, Deputy Chambers use of force against Plaintiff was objectively reasonable and does not amount to a Fourteenth Amendment violation.

-6-

AO72A
(Rev. 8/82)

Deputy Chambers is therefore entitled to qualified immunity.  See Hayek v. City of St. Paul, 488 F.3d 1049, 1054 (8th Cir. 2007)("If the allegations and undisputed facts do not amount to a constitutional violation, there is no necessity for further inquiries concerning qualified immunity." (citation omitted)).

With respect to the official capacity claim, "[e]ven had the video shown an excessive use of force, because [Plaintiff] does not attempt to separately prove an unconstitutional municipal policy, '[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability . . . unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.'" Mann v. Yarnell, 497 F.3d 822, 827-828 (8th Cir. 2007)(quoting City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985).  No such proof exists in this case.  In fact, Plaintiff states that Deputy Chambers was trained to only use force in the case of physically violent inmates or inmates making threatening physical movements.  Resp. at ¶ 11. In short, Plaintiff's contention is that Deputy Chambers ignored the use of force policy and his training when using force against the Plaintiff.  Thus, Defendant is entitled to summary judgment on the official capacity claim.

### 4.  Conclusion

For the reasons stated, I recommend that the summary judgment motion (Doc. 16) be granted and this case dismissed with prejudice.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties**

AO72A
(Rev. 8/82)

**are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED  this 23rd day of October 2013.


/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-8-